# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSCAR QUEVEDO, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA CEMETERY AND FUNERAL SERVICES, LLC,<br><br>Defendant. | Case No. CV 24-10509 FMO (MARx)<br><br>**ORDER RE: PLAINTIFF'S MOTION TO REMAND** |

Having reviewed and considered all the briefing filed with respect to Oscar Quevedo's ("plaintiff") Motion to Remand Case to Los Angeles Superior Court (Dkt. 13, "Motion"), the court concludes that oral argument is not necessary to resolve the Motion, see Fed. R. Civ. P. 78(b); L. R. 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

## BACKGROUND

On October 22, 2024, plaintiff filed a putative a wage-and-hour class action in state court against California Cemetery and Funeral Services, LLC ("defendant"), asserting claims for violations of the California Labor Code and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq. (See Dkt. 1, Notice of Removal ("NOR") at ¶¶ 4-5); (Dkt. 1-1, Exh. A, Compl. at ¶¶ 33-105). Among other things, plaintiff alleges that "Defendants maintained a systematic, company-wide policy and practice of" unpaid minimum wage, overtime, and

commissions, meal-and-rest period violations, failure to timely pay final wages at termination, failure to provide accurate itemized wage statements, and failure to indemnify employees for expenditures. (See Dkt. 1-1, Exh. A, Compl. at ¶ 4). Plaintiff seeks to represent a class comprised of "all other persons who have been employed by any Defendant in California as an hourly-paid or non-exempt employee during the statute of limitations period applicable to the claims pleaded here." (Id. at ¶ 2).

On December 6, 2024, defendant removed the action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). (See Dkt. 1, NOR at ¶ 1). Now pending is plaintiff's motion to remand. (See Dkt. 13, Motion).

## **LEGAL STANDARD**

Removal of a civil action from the state court where it was filed is proper if the action could have originally been brought in federal court. See 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court[.]"). "CAFA provides expanded original diversity jurisdiction for class actions meeting the amount in controversy and minimal diversity and numerosity requirements set forth in 28 U.S.C. § 1332(d)(2)." United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co., 602 F.3d 1087, 1090-91 (9th Cir. 2010); see Ibarra v. Manheim Invs., Inc., 775 F.3d 1193, 1195 (9th Cir. 2015) ("A CAFA-covered class action may be removed to federal court, subject to more liberalized jurisdictional requirements[.]"). Under CAFA, "district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant[.]" 28 U.S.C. § 1332(d)(2).

"[N]o antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 89, 135 S.Ct. 547, 554 (2014). Indeed, "Congress intended CAFA to be interpreted expansively." Ibarra, 775 F.3d at 1197.

**DISCUSSION**

Plaintiff contends that diversity jurisdiction does not exist because defendant has not shown, by a preponderance of the evidence, that the amount-in-controversy exceeds the $5 million CAFA threshold. (See Dkt. 13, Motion at 4-12). According to plaintiff, defendant's calculations are unreasonable, based on speculative assumptions, and lack evidentiary support. (See id. at 8, 12, 14-15). Defendant responds that the NOR's assumptions are reasonable and satisfy CAFA's amount-in-controversy requirement. (See Dkt. 21, Defendant's Opposition to Plaintiff's Motion to Remand ("Opp.") at 4-11).

"A defendant's amount in controversy allegation is normally accepted when invoking CAFA jurisdiction, unless it is 'contested by the plaintiff or questioned by the court.'" Jauregui v. Roadrunner Transportation Services, Inc., 28 F.4th 989, 992 (9th Cir. 2022) (quoting Dart Cherokee, 574 U.S. at 87, 135 S.Ct. at 553). "[T]he plaintiff can contest the amount in controversy by making either a 'facial' or 'factual' attack on the defendant's jurisdictional allegations. . . . When a plaintiff mounts a factual attack, the burden is on the defendant to show, by a preponderance of the evidence, that the amount in controversy exceeds the $5 million jurisdictional threshold." Harris v. KM Indus., Inc., 980 F.3d 694, 699 (9th Cir. 2020) (internal citations omitted). "The parties may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal." Ibarra, 775 F.3d at 1197 (internal quotation marks omitted). "CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." Id. at 1198.

The amount-in-controversy "does not mean likely or probable liability; rather, it refers to possible liability." Greene v. Harley-Davidson, Inc., 965 F.3d 767, 772 (9th Cir. 2020). It "reflects the maximum recovery the plaintiff could reasonably recover." Arias v. Residence Inn by Marriott, 936 F.3d 920, 927 (9th Cir. 2019) (emphasis in original). "[W]hen the defendant relies on a chain of reasoning that includes assumptions to satisfy its burden of proof, the chain of reasoning and its underlying assumptions must be reasonable ones." LaCross v. Knight Transp. Inc., 775 F.3d

1200, 1202 (9th Cir. 2015). The underlying "assumptions cannot be pulled from thin air[.]" Ibarra, 775 F.3d at 1199.

The "burden of demonstrating the reasonableness of the assumptions on which the calculation of the amount in controversy [is] based remain[s] at all times with [the defendant]." Harris, 980 F.3d at 701. However, a defendant does not need to "provide evidence proving the assumptions correct[,]" as this would be akin to "impos[ing] a requirement that [the defendant] prove it actually violated the law at the assumed rate." Arias, 936 F.3d at 927. "An assumption may be reasonable if it is founded on the allegations of the complaint." Id. at 925.

In the NOR, defendant explains that while "the class size is likely to exceed 2,000[,]" it assumed a "class size of 780" in order to be conservative in its calculations. (See Dkt. 1, NOR at ¶ 17). Defendant assumed a weekly violation rate for the failure to pay minimum wage and overtime, and the failure to provide meal periods and rest breaks. (See id. at 7-9). Based on these estimates, coupled with calculations for waiting time penalties, failure to provide wage statements, and 33% for attorney's fees, defendant initially estimated the amount-in-controversy to be nearly $16 million.[1] (See id. at 7-18).

According to plaintiff, defendant's calculations are unreasonable and based on speculative assumptions – plaintiff challenges defendant's assumption of a weekly or 20% violation rate for its calculations. (See Dkt.13, Motion at 1, 8-13); (Dkt. 25, Plaintiff's Reply in Support of Motion to Remand ("Reply") at 5-7). Plaintiff contends that defendant's violation rate assumption is effectively 100% because defendant "assumes all employees experienced a violation in every week they worked." (Dkt. 25, Reply at 1). Plaintiff also notes the lack of evidence as to: (1) the hourly wage rate; (2) the average length of shifts worked by class members; (2) whether the class members were part-time or full-time employees; (3) whether every single shift worked was long enough to warrant meal and/or rest breaks; (4) the meal and rest period violations experienced

---

[1] Defendant's calculation for waiting time penalties is based on the assumption that 50 employees would be entitled to such penalties. (See Dkt. 1, NOR at 12-13). In calculating the claims for waiting time penalties and wage statements, defendant appears to adopt a 100% violation rate for these claims. (See id. at 12-14).

by class members; and (5) the number of days they worked per week. (See Dkt.13, Motion at 7-8, 11-12); (Dkt. 25, Reply at 3). Plaintiff also challenges defendant's calculations as to the waiting time penalties and wage statement claims. (See Dkt. 13, Motion at 13-14).

In support of the NOR, defendant submitted a declaration from its counsel regarding: (1) the number of class members – current and former – during the relevant period; (2) the number of class members employed and entitled to a wage statement the year before plaintiff filed the Complaint; and (3) the number of class members no longer employed by defendant. (See Dkt. 1-2, Exh. B, Declaration of Carrie M. Francis ("Francis Decl.") at ¶¶ 3, 5, 7). Additionally, in response to plaintiff's Motion, defendant submitted a second declaration from an individual responsible for defendant's payroll services, which provides specifics as to the: (1) number of non-exempt employees or hourly-paid employees that were paid a commission; (2) average hourly wage rates; (3) average number of workweeks; (4) number of hours in one workday; and (5) number of class members no longer employed by defendant. (See Dkt. 21-1, Declaration of Scott Timberman ("Timberman Decl.") at ¶¶ 2, 7-15, 18). According to the second declaration, "at least 780 employees worked as either non-exempt or hourly-paid employees and were paid a commission during the relevant time period[,]" "the average hourly wage for the proposed class is $15.25[,] and the average [number of] workweeks is 147.59." (Id. ¶¶ 8 & 10). Based on these figures, defendant re-calculated the claims for minimum wage, overtime, meal and rest periods, waiting time penalties, and wage statements, and assumed 25% for attorney's fees, bringing the total estimated amount-in-controversy to just over $12 million. (See Dkt. 21, Opp. at 13-21).

In his Reply, plaintiff argues that the second "declaration (1) lacks foundation, (2) is based on hearsay with references to a mysterious 'Exhibit A' that was never provided to Plaintiff, (3) does not specify what methodologies it used to calculate the average hourly wage, average number of workweeks, or number of class members and (4) consists of speculative and conclusory assertions, rather than the summary-judgment-type evidence." (Dkt. 25, Reply at 2). The court is not persuaded by plaintiff's arguments. Exhibit A was attached to defendant's Opp. (See Dkt. 21, Exh. A at ECF 30). And the second declaration stated that the declarant had access to defendant's employment records and explained how the relevant figures were calculated. (See

Dkt. 21-1, Timberman Decl. at ¶¶ 3-4, 6-7, 15-19); see, e.g., Jauregui, 28 F.4th at 991 (noting that a declaration from defendant's senior payroll lead constituted "summary judgment style evidence"); see also Arias, 936 F.3d at 927 (noting the defendant is not required to prove the "assumptions made part of the defendant's chain of reasoning" or that "it actually violated the law at the assumed rate"). In short, the court finds that the declarations, coupled with the allegations in the Complaint, are sufficient to support defendant's amount-in-controversy calculations. See, e.g., La Grow v. JetBlue Airways Corp., 2024 WL 3291589, *7 (C.D. Cal. 2024) (finding similar declaration sufficient to support 25% violation rate assumption and calculations); Yorba v. Government Employees Ins. Co., 2024 WL 3442416, *2 (S.D. Cal. 2024) ("[A] declaration from a knowledgeable employee along with allegations in the complaint can satisfy the defendant's burden, even without other evidence such as payroll or timekeeping records."); see, e.g., Jauregui, 28 F.4th at 995 (reversing district court order remanding action where CAFA's "amount in controversy would be met using any of the plausible figures").

## CONCLUSION

**This Order is not intended for publication. Nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

Based on the foregoing, IT IS ORDERED THAT plaintiff's Motion to Remand **(Document No. 13)** is **denied**.

Dated this 8th day of July, 2025.

/s/
Fernando M. Olguin
United States District Judge